## LINVILLE v. UNITED STATES et al.

### No. 283.

United States District Court
E. D. Pennsylvania.

Sept. 28, 1951.

As Amended Oct. 4, 1951.

Charles Lakatos, of Freedman, Landy & Lorry, Philadelphia, Pa., for libellant.

George E. Beechwood and Charles L. Ford, of Conlen, LaBrum & Beechwood, Philadelphia, Pa., for respondents.

BARD, District Judge.

This is a seaman's action in admiralty for damages for personal injuries and for maintenance and cure. On the basis of the pleadings and the testimony, I make the following special

### Findings of Fact

1. Libellant is Pleasant M. Linville, a merchant seaman, 47 years old, and a resident of Marcus Hook, Pennsylvania.

2. Respondents are the United States of America (hereinafter called respond-ent), and Tankers Company, Incorporated, a Delaware corporation.

3. No evidence whatsoever was presented to show that Tankers was in any way liable for libellant's accident and resulting injuries.

4. Respondent owned, operated and controlled the United States Navy Tanker "Tomahawk" at all times mentioned herein.

5. On December 30, 1948 in Los Angeles, California, libellant was employed aboard the "Tomahawk" as an able bodied seaman for $225.46 per month and overtime at $1.12½ per hour for a voyage to European ports and return to Continental United States for a term not exceeding twelve months.

6. The "Tomahawk" sailed from San Pedro, California, on January 1, 1949 with a cargo of high-test gasoline bound for Germany. It sailed from Germany on or about February 6, 1949 bound for New York with no cargo except water ballast.

7. On the trip to New York the deck crew was ordered to clean out the rust from the cargo tanks, which rust had accumulated over some period of time. This work was commenced a few days before February 12, 1949.

8. The weather on February 12, 1949, as recorded in the ship's log by the officer who had the 0400 to 0800 watch, was "O'cast Rough SW sea & swell vessel rolling and pitching heavily shipping seas over bow and main deck. Lookout posted on flying bridge due to heavy weather good visibility hazy horizon".

9. Libellant was assigned to the 4 to 8 watch for his normal duties but the job of cleaning the tanks required the services of the entire deck crew, and libellant on that day reported for tank cleaning duty at 8:30 A.M. at the starboard opening of the No. 1 main tank.

10. At the time libellant reported for duty the weather was rough, the vessel was rolling and pitching heavily, shipping seas over the bow and main deck. Libellant and a fellow crew member were stationed on deck at the starboard opening of the No. 1 main tank, while five or six men were in-

side the tank scraping out the rust and loading it in buckets, which were then pulled up through the opening by libellant and his partner.

11. The point where libellant was required to work was 20 to 25 feet aft of the forward bulkhead at the bow of the vessel.

12. About 9 A.M. libellant and his partner put on their rain gear. At 10 A.M. the tank clearing detail ceased work and went below for coffee. The detail returned on deck about 10:20 A.M.

13. When they returned on deck the seas had increased and the weather had become more threatening, and the crew complained to the mate and told him it was too rough to continue working. The mate replied to the effect that they had better continue working or else the "old man" would have them locked up in the brig.

14. The men returned to the No. 1 main tank and continued with their work.

15. Shortly before 11:00 A.M. a large wave came over the bow but did not knock libellant down. Approximately ten minutes later another large wave came over the bow; this wave caught libellant on his right side, swept him off his feet and knocked him down on the deck. As he went down he struck his right hand on the deck and his spine against a fairlead that was located close to the place where he was working. He made several attempts to get up but the seas coming overboard knocked him down flat on his back. He finally managed to crawl up into the shelter area under the bow of the ship. At that time he could hardly walk, had severe pain in the lower back, and swelling and pain in the area of the base of his right thumb.

16. After libellant was injured, the mate transferred the tank cleaning detail from No. 1 main tank to No. 3 main tank, which was aft of No. 1 main tank.

17. The tank cleaning detail was dismissed between noon and 1 P.M. because of bad weather.

18. The weather, as recorded in the ship's log by the officer who had the 0800 to 1200 watch that day, was: "Mostly o'cast. Rough SSW sea & swell. Seas over bow, spray over bridge. Vessel rolling & pitching mod. heavy. Vis. fair."

19. Cleaning rust out of these tanks was not essential for the safety of the ship or her crew.

20. Libellant was injured as a result of the mate's negligence in unnecessarily ordering libellant to do work at a place where libellant would be exposed to the hazards of the weather which the ship was then encountering.

21. Libellant was not contributorily negligent.

22. After the detail was dismissed libellant was given first aid by the purser in the form of liniment and a heat pad which libellant applied to his back in the area where he was injured.

23. Libellant was discharged from the "Tomahawk" at New York on February 18, 1949 at which time he obtained a master's certificate for hospitalization for his injuries.

24. Libellant was hospitalized for his injuries at the United States Marine Hospital at Galveston, Texas, from March 3rd to March 12, 1949, when he was discharged as fit for duty.

25. Libellant did not ship out again until May 13, 1949, when he was employed aboard the S.S. "E. W. Sinclair".

26. I am not convinced by a preponderance of the credible evidence that libellant received a herniated intervertebral disc as a result of the accident here involved.

27. Libellant sustained a contusion and sprained ligaments of the right thumb, sustained a diastasis of an old abdominal scar which necessitated the removal of two torn wire sutures from his lower abdomen, and a severe contusion in the lumbrosacral area which activated an existing arthritic condition.

28. Except for one period when libellant was undergoing outpatient treatment and was hospitalized for subsequent injuries, and for another period of almost six months when libellant remained ashore, libellant's employment record since the ac-

cident aboard the "Tomahawk" is almost as regular as it was prior to this accident.

29. Because of his activated arthritic condition, libellant will lose one to two months employment each year.

30. Libellant has a working expectancy of thirteen years.

31. Libellant's wages, including overtime, for the voyage on the "Tomahawk" covering a period of one month and twenty days, totalled $596.48.

32. Libellant's present earning capacity is about $330 per month.

33. After considering libellant's injuries, his past and future pain and suffering, his past and future loss of earnings, and his past and future expenses, I find that libellant suffered damages in the amount of $12,500.

34. Libellant and respondent stipulated that maintenance and cure should be paid at the rate of $5 per day.

35. Libellant is entitled to maintenance and cure for the period from February 19, 1949 to March 2, 1949, inclusive, and for sixty days during the period from December 12, 1949 to June 6, 1950, when he was voluntarily unemployed.

36. Libellant is entitled to maintenance and cure for seventy-two days in the amount of $360.

### Conclusions of Law

1. This Court has jurisdiction of this case.

2. Libellant's injuries were caused by the negligence of respondent United States of America's agents, servants or employees.

3. Libellant was not contributorily negligent.

4. Respondent United States of America is liable to libellant for damages in the amount of $12,500.

5. Respondent United States of America is liable to libellant for maintenance and cure in the amount of $360.

6. Respondent Tankers Company, Incorporated is not liable to libellant for damages or for maintenance and cure.

7. Judgment is hereby entered in favor of libellant against respondent United States of America in the amounts of $12,500 for damages and $360 for maintenance and cure.

8. Judgment is hereby entered in favor of respondent Tankers Company, Incorporated against libellant.